# Exhibit A

# FLORIDA HIGHWAY PATROL
## SUPERVISOR'S USE OF CONTROL REPORT

### SECTION ONE
### IDENTIFICATION

| TROOP: | DISTRICT: | | CASE NUMBER: | | |
|---|---|---|---|---|---|
| C | Pinellas | | FHPC11OFF081193 | | |
| DATE: | TIME: | LOCATION (INCLUDE COUNTY AND DISTANCE FROM NEAREST CITY): | | | |
| 9/19/11 | 11:45 AM | 7651 US19 North, in the city of Pinellas Park, in Pinellas County | | | |
| REASON FOR INITIAL CONTACT: | | AREA COMPOSITION | LIGHTING | WEATHER: | ROAD SYSTEM IDENTIFIER |
| 04 Crash Investigation | | 02 Business | 01 Daylight | 01 Clear | 07 Other (Specify in Narrative) |
| INVESTIGATION CONDUCTED AT: | | If Other Location, Where? | | | |
| 01 Scene | | | | | |
| PHOTOGRAPHS TAKEN: | | By Whom? | | | |
| 02 Color | | Corporal Robert C. Hinton | | | |

### SECTION TWO
### SUBJECT INFORMATION

**SUBJECT #1**

| NAME: | DOB: | RACE: | SEX: | ETHNIC: | DL or Other ID Number: | State: |
|---|---|---|---|---|---|---|
| Danielle Christine Maudsley | 09/09/91 | W | 02 Female | | M324163918290 | FL |
| HOME STREET ADDRESS: | | | | CITY: | STATE: | ZIP CODE: |
| 7257 15th Street North | | | | St. Petersburg | FL | 33702 |
| BUSINESS STREET ADDRESS: | | | | CITY: | STATE: | ZIP CODE: |

| HOME PHONE #: | BUSINESS PHONE #: | | SOCIAL SECURITY #: | | CRIMINAL HISTORY CHECKED | | |
|---|---|---|---|---|---|---|---|
| | | | 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 | | 01 YES | | |
| SUBJECT INTERVIEWED: | | SUBJECT ARRESTED: | ATTITUDE: | ALCOHOL: | BAC %: | DRUG: | DRUG TEST: |
| 02 NO | | 01 YES | 07 Not a Fact | 02 NO | | 03 UNKNOW | 02 NO |
| MOST SERIOUS RESISTANCE OFFERED: | | | WEAPONS USED: | LIST TYPE(S) OF CONTROLLED SUBSTANCE(S): | | | |
| 04 Active Physical | | | 05 None | | | | |
| INJURED: | | | | DISPOSITION: | | | |
| 06 Visible Injury | | | | 01 Admitted to Hospital | | | |

**SUBJECT #2**

| NAME: | DOB: | RACE: | SEX: | ETHNIC: | DL or Other ID Number: | State: |
|---|---|---|---|---|---|---|
| | | | Select One | | | |
| HOME STREET ADDRESS: | | | | CITY: | STATE: | ZIP CODE: |
| BUSINESS STREET ADDRESS: | | | | CITY: | STATE: | ZIP CODE: |

| HOME PHONE #: | BUSINESS PHONE #: | | SOCIAL SECURITY #: | | CRIMINAL HISTORY CHECKED | | |
|---|---|---|---|---|---|---|---|
| | | | | | Select One | | |
| SUBJECT INTERVIEWED: | | SUBJECT ARRESTED: | ATTITUDE: | ALCOHOL: | BAC %: | DRUG: | DRUG TEST |
| Select One | | Select One | Select One | Select One | | Select One | Select One |
| MOST SERIOUS RESISTANCE OFFERED: | | | WEAPONS USED: | LIST TYPE(S) OF CONTROLLED SUBSTANCE(S): | | | |
| Select One | | | Select One | | | | |
| INJURED: | | | | DISPOSITION: | | | |
| Select One | | | | Select One | | | |

**SUBJECT VEHICLE**

| YEAR: | MAKE: | MODEL: | BODY STYLE: | COLOR: |
|---|---|---|---|---|
| 2008 | Chevrolet | Impala LS | 4 door sedan | gold |
| TAG#: | STATE: | VIN: | | |
| 1984GT | FL | 2G1WB58K289162083 | | |

### SECTION FOUR
### PERSONNEL INFORMATION

**PRIMARY TROOPER/OFFICER**

| RANK: | NAME: | | AGENCY: | | WORK PHONE #: |
|---|---|---|---|---|---|
| Trooper | Daniel A. Cole | | Florida Highway Patrol | | (727) 570-5010 |
| ID#: | PIN: | INJURED: | DISPOSITION: | CONTROL USED: | |
| 807 | 1875 | 01 No Injury | 04 N/A | 10 ECD | |

**BACK-UP TROOPER/OFFICER**

| RANK: | NAME: | | AGENCY: | | WORK PHONE #: |
|---|---|---|---|---|---|
| | | | | | |
| ID#: | PIN: | INJURED: | DISPOSITION: | CONTROL USED: | |
| | | Select One | Select One | Select One | |

# FLORIDA HIGHWAY PATROL
## SUPERVISOR'S USE OF CONTROL REPORT

### OTHER TROOPER/OFFICER

| RANK: | NAME: | | AGENCY: | | WORK PHONE #: |
|---|---|---|---|---|---|
| ID#: | PIN: | INJURED: Select One | TREATMENT: Select One | CONTROL USED: Select One | |

### OTHER TROOPER/OFFICER

| RANK: | NAME: | | AGENCY: | | WORK PHONE #: |
|---|---|---|---|---|---|
| ID#: | PIN: | INJURED: Select One | DISPOSITION: Select One | CONTROL USED: Select One | |

### OTHER TROOPER/OFFICER

| RANK: | NAME: | | AGENCY: | | WORK PHONE #: |
|---|---|---|---|---|---|
| ID#: | PIN: | INJURED: Select One | DISPOSITION: Select One | CONTROL USED: Select One | |

### PRIMARY DUTY OFFICER / SECONDARY DUTY OFFICER

| NAME: Earl Boyette | AGENCY: FHP | NAME: | AGENCY: |
|---|---|---|---|

### SUPERVISOR NOTIFIED / TROOP SHIFT COMMANDER NOTIFIED

| NAME: Raymond O. Ada III | TIME: 11:45 AM | NAME: Capt. Quenneville | TIME: 12:07 PM |
|---|---|---|---|

### OFFICE OF PROFESSIONAL COMPLIANCE NOTIFIED If Yes provide name and time of notification

| 01 Yes | RANK: Lt. | Name: Bobby Collins | TIME: 3:00 PM |
|---|---|---|---|

### EMS NOTIFIED If Yes identify the unit that responded and the time of notification

| 01 Yes | Unit: Rescue 33 and Sunstar 489 | TIME: 11:46 AM |
|---|---|---|

## SECTION SIX
## CHARGES

| SUBJECT NUMBER | CHARGE |
|---|---|
| 1 | Leaving The Sene - Property Damage |
| 1 | Leaving The Sene - Property Damage |
| 1 | No Valid Drivers License |
| 1 | Escape |
| 1 | |

## SECTION SEVEN
## WITNESSES

### WITNESS #1

| NAME: | | | | | |
|---|---|---|---|---|---|
| HOME STREET ADDRESS: | | | CITY: | STATE: | ZIP CODE: |
| BUSINESS STREET ADDRESS: | | | CITY: | STATE: | ZIP CODE: |
| HOME PHONE #: | | BUSINESS PHONE# | | STATEMENT TAKEN: Select One | |

### WITNESS #2

| NAME: | | | | | |
|---|---|---|---|---|---|
| HOME STREET ADDRESS: | | | CITY: | STATE: | ZIP CODE: |
| BUSINESS STREET ADDRESS: | | | CITY: | STATE: | ZIP CODE: |
| HOME PHONE #: | | BUSINESS PHONE# | | STATEMENT TAKEN: Select One | |

## SECTION EIGHT
## OTHER REPORTS
(ALL OTHER REPORTS ARE TO BE ATTACHED TO THIS REPORT)

| TYPE OF REPORT | NUMBER | OTHER TYPES OF REPORTS (LIST) | NUMBER |
|---|---|---|---|
| ☒ TRAFFIC CRASH | FHPC11OFF081143 | TRAFFIC CRASH | FHPC11OFF081145 |
| ☒ UNIFORM CRIME REPORT | FHPC11OFF081193 | | |
| ☐ PURSUIT REPORT | | | |
| ☒ ECW REPORT | FHPC11OFF081193 | | |
| ☒ OTHER AGENCY REPORT | SO11-319706 | | |

# FLORIDA HIGHWAY PATROL
# SUPERVISOR'S USE OF CONTROL REPORT

## SECTION NINE
## NARRATIVE

*Supervisor is to document his or her investigation of the use of control and all related reports. The emphasis is on documenting the actions taken by the supervisor in reviewing the incident and whether the reports submitted by other members are complete and accurate.*

On September 19, 2011, at 9:11 a.m., Trooper Daniel A. Cole was dispatched to investigate a hit and run traffic crash at 102nd Avenue N. and 98th Street. At 9:43 a.m., a second hit and run crash was reported at Starkey Road and Bardmoor Blvd. While en route to the first crash, Trooper Cole came upon the second crash scene and stopped. The people at the second crash informed Trooper Cole that the crash had occurred a few minutes before his arrival and provided a description of the hit and run vehicle and its driver. The description and tag were the same as the hit and run vehicle from the crash at 102nd Avenue N. and 98th Street. Trooper Cole asked the TBRCC to put out a BOLO for the suspect vehicle.

The Pinellas County Sheriff's office and Trooper Larry Maynard responded to the address of the registrant of the hit-n-run vehicle at 8509 Portulaca Ave. Two Pinellas County Sheriffs deputies, including Deputy Chad Earl, arrived at the address before Trooper Maynard. He observed the hit and run vehicle parked in the driveway. He checked the area for the driver and found the back door to the residence was open. The deputies announced themselves at the open door and heard someone within the residence say to another to be quiet. The deputies entered the residence and found the suspect, Danielle C. Maudsley, and others inside. Ms. Maudsley made statements to the deputies that indicated she was the driver. Trooper Cole was notified that the sheriff's office had located his suspect and he went to their location.

Trooper Cole arrived at 8509 Portulaca Avenue at 10:04 a.m. Ms. Maudsley matched the description given by the victims. Trooper Cole arrested Ms. Maudsley at 10:28 a.m. for driving without a license and two counts of leaving the scene of a crash with property damage. Trooper Cole handcuffed her behind her back, and transported her to the FHP station at 7651 US19 North in Pinellas Park to complete his arrest reports. Trooper Cole parked his patrol car facing west towards the employee entrance on the south side of the station. He activated his patrol car camera on his way to the station to make a recording of the time he was alone with the suspect in his patrol car and in the rear of the building. Trooper Cole brought the suspect into the training/conference room on the east end of the building. Trooper Cole sat the suspect in a chair against the east wall and to north of the doorway to the intoxilizer room which is on the opposite side of the room from doorway to the hallway. Trooper Cole sat at the conference table between the suspect and the door to the hallway. While Trooper Cole was completing his reports the suspect slipped her handcuffs in front of her. She then got up and headed towards the hallway door around the back of Trooper Cole. Trooper Cole sensed her running past him towards the doorway to the hall. Surprised, he called out to her, "Where are you going?" The suspect ran through the doorway into the hall. Trooper Cole got up from the conference table and ran after her. The suspect ran down the hall towards the employee entrance on the south side of the building where she had entered. As she reached the door, Trooper Cole entered the hallway way from the conference room. The fleeing suspect pushed open the door to the parking lot. This door is a heavy metal door with a door closer and a push bar across the center that has to be pushed to open the door. The fleeing suspect was slowed by the process of opening the door. During this time, Trooper Cole came down the hall and drew his ECD (Electronic Control Device) from its crossdraw holster on his gun belt. As the fleeing suspect went thru the door Trooper Cole closed the distance between them. The suspect cleared the door to the parking area and began to run south. Trooper Cole followed the suspect outside and on the walkway between the building and the parking area, he deployed his ECD at the fleeing suspects back. The front of the ECD was approximately two feet away from the suspect at the time it was discharged. The ECD probes struck the suspect in the back. The fleeing suspect ran a couple steps more and turned her body to the left. The fleeing suspect then fell backwards striking the asphalt roadway with her buttocks and then the back of her head. At, 11:45 a.m., immediately after the deployment of his ECD, Trooper Cole reported the incident over the radio to the TBRCC. At 11:46 a.m. he requested EMS (emergency medical services) via radio.

I heard Trooper Cole's radio transmission and headed to his location. Trooper William Dyer followed me out to the parking lot. In the parking lot I found Trooper Cole standing over the suspect who was lying on

## FLORIDA HIGHWAY PATROL
## SUPERVISOR'S USE OF CONTROL REPORT

the ground. I visually assessed the suspects condition. At that time the suspect was conscious, speaking and moving. Initially the only injury I observed was a cut on the suspects lip. I went to the trunk of my patrol car to get an emergency blanket to make her more comfortable and rubber gloves. When I returned to the suspect she was unconscious. I was unable to wake her but confirmed she was still breathing and still had a pulse. Trooper Cole continued to monitor the suspects condition while I began collect some of the parts of the discharged ECD cartridge which would have to be submitted into evidence.

At 11:51 a.m. Pinellas Park Rescue 33 with Paramedic Timothy Brooke and EMT Anthony Iorio arrived on scene. They took over care of the suspect. At 11:52 a.m. Sunstar Ambulance 489 with Paramedic Frank McHugh, EMT Kenoviah Heron and Medic Dominique McKing arrived. Sunstar Ambulance 489 transported the suspect to Bayfront Medical Center. I had Trooper Suzanne Conklin escort the ambulance to the hospital. Trooper Conklin later reported that the suspect had suffered a skull fracture and would be going into surgery. Trooper Conklin was then sent to attempt to notify the family of the suspect. Trooper Conklin notified the suspect's mother of her daughter's condition at 3:50 p.m.

Trooper Cole was sent to the FHP station in Tampa to download the data from his ECD and to upload the incident video from his camera. Meanwhile, Lt. Bobby Collins and Corporal Robert Hinton arrived at the FHP station in Pinellas Park. Lt. Collins took photos of the station. Corporal Hinton was sent to Bayfront Medical Center to take photos of the suspect. Trooper Cole then returned to the FHP station in Pinellas Park to complete his Offense Incident Report and to submit the deployed ECD cartridge into evidence. Due to the severity of the suspects injuries the criminal charges against suspect were submitted to the Pinellas County Jail and her pick up deferred until she is released from the hospital.

After Trooper Cole uploaded the video in Tampa, I downloaded the video and reviewed the incident. The video recording was consistent with Trooper Cole's report. The video showed that the suspect was in custody and handcuffed behind her back when she was brought into the station. It later showed the suspect running out of the station away from Trooper Cole in an attempt to escape with her hands handcuffed in front of her at the time Trooper Cole deployed his ECD.

On September 21, 2011, I was contacted by Capt. Jacqueline Freeman. She asked me to collect Trooper Cole's ECD and ECD cartridges and to put them into evidence. Trooper Cole's ECD, ECD battery and ECD catridges (two) were submitted into evidence that afternoon. Arrangements were made to have a new ECD issued to Trooper Cole.

During this investigation Trooper Cole was questioned about his actions and there adherence to division policy. According to Florida Highway Patrol Policy 10.05.04 C regarding the use of the ECD, a member is authorized to deploy the ECD against an arrestee who uses active physical reisitance in an attempt to flee or escape. However, according to Florida Highway Patrol Policy 10.05.04 C 1 (b) the use of the ECD on a handcuffed prisoner is prohibited unless there is justifiable cause. In this incident Trooper Cole was unable to tell whether the suspect was still handcuffed. This is because prior to arriving at the station, the suspect was able to slip one hand out of Trooper Cole's handcuffs while in the back seat of his patrol car. Once at the station, Trooper Cole handcuffed the suspect behind her back again before bringing her into the station. However before the suspect attempted to flee, she was able to move her hands in front of her. When the suspect fled and Trooper Cole ran after her, Trooper Cole could not see whether or not she was still handcuffed. He could only be certain that the handcuffs were no longer where he had placed them.

Furthermore, Florida Highway Patrol Policy 10.01.07 states, "Members of the Florida Highway Patrol shall in every instance seek to employ the minimum amount of control required to successfully overcome physical resistance, prevent escapes, and effect arrests." Trooper Cole reported that when he drew his ECD he was entering the hallway from the conference/training room. At that time the fleeing suspect was at the door to the parking lot at the end of the hallway. The distance from the conference/training room doorway to the parking lot door is over fourteen feet. However the fleeing suspect had to open the heavy metal door to the parking lot from a fully closed position. When Trooper

## FLORIDA HIGHWAY PATROL
## SUPERVISOR'S USE OF CONTROL REPORT

Cole got to the parking lot door it was still partially open. This enabled Trooper Cole to exit through the door more rapidly and to close the distance between him and the fleeing suspect. When Trooper Cole appears in the video he is approximately three to four feet behind the fleeing suspect. However, the suspect was running away and never within reach of Trooper Cole. Trooper Cole decided to to use his ECD to stop the suspect in lieu of trying to overtake and physically restrain her in order to avoid the possibility of getting into a physical altercation with the suspect while holding the taser in his strong side hand. Trooper Cole was not certain that he would have been able to overtake the fleeing suspect. The suspect is twenty years old, thin, and was wearing a tank top, athletic shorts and athletic shoes. Trooper Cole is 38 years old and was wearing his class B uniform including equipment, ballistic vest and boots.

Lastly, Florida Highway Patrol Policy 10.01.07 A 2 requires that, "Whenever possible, members shall exercise persuasion, advice and/or warning of the impending use of control." Though there is nothing to indicate that the suspect would have heeded any such warning it appears in the video that the opportunity to render a warning was available to Trooper Cole. Trooper Cole was in no apparent danger and because of his closeness to the suspect, the time necessary to warn the suspect would not have prevented him from being able to use the ECD if the suspect continued to flee. The ECD cartridges issued by the agency have a maximum range of 25 feet. Trooper Cole felt the situation developed too quickly to give a warning and that the suspect would have tried to evade the ECD if given a warning.

In conclusion there was no evidence to indicate that Trooper Cole acted in a malicious manner or had any intent to cause harm to the suspect.

## FLORIDA HIGHWAY PATROL
## SUPERVISOR'S USE OF CONTROL REPORT

### SECTION TEN
### MANAGEMENT REVIEW

**INVESTIGATED BY:**

| SIGNATURE | NAME | RANK | PIN# | DATE OF REPORT |
|---|---|---|---|---|
| [signed] | RAYMOND O. ADA III | SGT | 1494 | 09-30-11 |

**REVIEWED BY:**

| DISTRICT SHIFT COMMANDER | SIGNATURE | WAS AMOUNT OF FORCE JUSTIFIED? | DATE |
|---|---|---|---|
| LT. HAROLD E. FREAR | [signed] Hal E. Frear | ☐ YES ☒ NO | 10-03-11 |

COMMENTS: BASED UPON MY REVIEW OF THE TOTALITY OF THE CIRCUMSTANCES I BELIEVE THE FORCE USED EXCEEDED THE MINIMUM FORCE NECESSARY TO APPREHEND THE SUSPECT AND/OR DEVIATE FROM POLICY

| DISTRICT COMMANDER | SIGNATURE | WAS AMOUNT OF FORCE JUSTIFIED? | DATE |
|---|---|---|---|
| [signed] | [signed] | ☐ YES ☒ NO | 10-03-2011 |

COMMENTS: Agreed, more than necessary, could have used Alternative action

| TROOP COMMANDER | SIGNATURE | WAS AMOUNT OF FORCE JUSTIFIED? | DATE |
|---|---|---|---|
| J R Freeman (ATC) | [signed] | ☐ YES ☒ NO | 10-04-2011 |

COMMENTS: Based on my review of the attached documents, and the totality of the incident, I believe the force used exceeded the MINIMUM amount of force needed to affect the arrest/apprehension of Ms. Maudsley

| REGIONAL COMMANDER | SIGNATURE | WAS AMOUNT OF FORCE JUSTIFIED? | DATE |
|---|---|---|---|
|  |  | ☐ YES ☐ NO |  |

COMMENTS:

| PROFESSIONAL COMPLIANCE DIRECTOR | SIGNATURE | WAS AMOUNT OF FORCE JUSTIFIED? | DATE |
|---|---|---|---|
|  |  | ☐ YES ☐ NO |  |

COMMENTS:

| RETURNED FOR FURTHER INVESTIGATION: | DATE RETURNED | RETURNED BY |
|---|---|---|
| ☐ YES ☐ NO |  |  |

COMMENTS: