# Exhibit E

# FLORIDA HIGHWAY PATROL
## POLICY MANUAL

| | SUBJECT<br>USE OF CONTROL/RESPONSE TO RESISTANCE | POLICY NUMBER<br>10.01 |
|---|---|---|
| TROOPER | | ISSUE DATE<br>02/01/96 |
| | APPLICABLE CALEA STANDARDS<br>Section 1.3; 82.3.5 | REVISION DATE<br>07/01/11 |
| | | TOTAL PAGES<br>15 |

**10.01.01    PURPOSE**

To establish policy, guidelines and limitations concerning the response to resistance and the use of deadly force by members of the Florida Highway Patrol.

**10.01.02    AUTHORITY**

A.  The Florida Highway Patrol is granted authority to employ control techniques, including the utilization of force likely to cause death or great bodily harm, in the performance of its official duties in accordance with the provisions of Chapter 776, Florida Statutes.

B.  Chapter 776, Florida Statutes, has set forth the following laws governing the use of such control:

1.  Section 776.012, Florida Statutes, Use of Force in Defense of Person - A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if he or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to him or herself or another or to prevent the imminent commission of a forcible felony.

2.  Section 776.031, Florida Statutes, Use of Force in Defense of Others - A person is justified in the use of force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to prevent or terminate the other's trespass on, or other tortious or criminal interference with, either real property other than a dwelling or personal property, lawfully in his or her possession or in the possession of another who is a member of his or her immediate family or household or of a person whose property he or she has a legal duty to protect. However, the person is justified in the use of deadly force only if he or she reasonably believes that such force is necessary to prevent the imminent commission of a

forcible felony. A person does not have a duty to retreat if the person is in a place where he or she has a right to be.

3. Section 776.05, Florida Statutes, Law Enforcement Officers; Use of Force in Making an Arrest - A law enforcement officer, or any person whom the officer has summoned or directed to assist him or her, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. The officer is justified in the use of any force:

   a. Which he or she reasonably believes to be necessary to defend him or herself or another from bodily harm while making the arrest;

   b. When necessarily committed in retaking felons who have escaped; or

   c. When necessarily committed in arresting felons fleeing from justice. However, this subsection shall not constitute a defense in any civil action for damages brought for the wrongful use of deadly force unless the use of deadly force was necessary to prevent the arrest from being defeated by such flight and, when feasible, some warning had been given, and:

      (1) The officer reasonably believes that the fleeing felon poses a threat of death or serious physical harm to the officer or others; or

      (2) The officer reasonably believes that the fleeing felon has committed a crime involving the infliction or threatened infliction of serious physical harm to another person.

4. Section 776.051, Florida Statutes, Use of Force in Resisting or Making an Arrest; Prohibition.

   a. A person is not justified in the use of force to resist an arrest by a law enforcement officer who is known, or reasonably appears, to be a law enforcement officer.

   b. A law enforcement officer, or any person whom the officer has summoned or directed to assist him or her, is not justified in the use of force if the arrest is unlawful and known by him or her to be unlawful.

5. Section 776.07, Florida Statutes, Use of Force to Prevent Escape.

   a. A law enforcement officer or other person who has an arrested person in his or her custody is justified in the use of any force which he or she reasonably believes to be necessary to prevent the escape of the arrested person from custody.

    b.    A correctional officer or other law enforcement officer is justified in the use of force, including deadly force, which he or she reasonably believes to be necessary to prevent the escape from a penal institution of a person whom the officer reasonably believes to be lawfully detained in such institution under sentence for an offense or awaiting trial or commitment for an offense.

> **WARNING**
> **Florida Highway Patrol Policy is more restrictive than Florida Statutes.**
> No member is authorized to use deadly force, including in preventing an escape or to capture a fleeing felon, unless the member has reasonable cause to believe that the subject poses an imminent threat of death or serious physical harm to the member or another person.

### 10.01.03   POLICY

It is the policy of the Florida Highway Patrol to comply with the provisions of law concerning the use of control in the lawful performance of duties. Members may resort to the use of control, including the use of force likely to cause death or great bodily harm, only when authorized by law. However, no member is authorized to use deadly force, including in preventing an escape or to capture a fleeing felon, unless the member has reasonable cause to believe that the subject poses an imminent threat of death or serious physical harm to the member or another person.

### 10.01.04   DEFINITIONS

    A.    **AGGRESSIVE RESISTANCE** – A subject's attacking movements toward a member that may cause injury but are not likely to cause death or great bodily harm to the member or others. Examples include: subject balls up his fist and approaches the member; subject forces the member back as the member tries to take subject into custody; subject grabs any part of the member's body.

    B.    **ACTIVE RESISTANCE** – A subject's use of physically evasive movements directed toward the member. Examples include: bracing, tensing, pushing or pulling, to prevent the member from establishing control over the subject.

    C.    **PASSIVE RESISTANCE** – A subject's verbal and/or physical refusal to comply with a member's lawful direction causing the member to use physical techniques to establish control. Examples include: the subject refuses to move at the member's direction; the subject peacefully protests at a political event in a public location; the subject refuses to take his hands out of his pockets or from behind his back.

    D.    **CONTROL** – Verbal and/or physical measures employed by members to overcome resistance, aggressive behavior or actual or attempted flight while effecting a lawful arrest, including any application of Aerosol Subject Restraint (ASR), PR-24, Electronic Control Device (ECD) and measures likely to cause death or great bodily harm.

E. **COUNTERMOVES** - Techniques that impede a subject's movement toward a member or others, such as blocking, striking, distracting, kicking, dodging, weaving, redirecting or avoiding, followed by appropriate controlling techniques.

F. **DEADLY FORCE** - Force which is likely to cause death or great bodily harm and includes, but is not limited to:

   1. The firing of a firearm in the direction of the person to be arrested, even though no intent exists to kill or inflict great bodily harm; and

   2. The firing of a firearm at a vehicle in which the person to be arrested is riding.

G. **FORCIBLE FELONY** - Treason; murder; manslaughter; sexual battery; carjacking; home-invasion robbery; robbery; burglary; arson; kidnapping; aggravated assault; aggravated battery; aggravated stalking; aircraft piracy; unlawful throwing, placing or discharging of a destructive device or bomb; and any other felony which involves the use or threat of physical force or violence against any individual.

H. **GREAT BODILY HARM/SERIOUS PHYSICAL HARM** - Bodily injury that creates a substantial risk of death; causes serious, personal disfigurement; or results in long-term loss or impairment of the functioning of any bodily member.

I. **IMPACT WEAPONS** – Any object used for striking. Impact weapons may disable or cause temporary motor dysfunction.

J. **INCAPACITATION TECHNIQUES** - Control methods that are intended to render a subject temporarily disabled.

K. **INTERMEDIATE DEVICES** – Devices designed to supplement weaponless control methods. The definition includes devices, such as the PR-24/ASP batons, as well as the Aerosol Subject Restraint (ASR) and the Electronic Control Device (ECD). Intermediate devices are not designed to replace firearms and may not provide sufficient control when resistance by means of deadly force is offered.

L. **MECHANICAL COMPLIANCE** – A member may gain control over a subject by applying pressure or leverage on a joint by locking it up so that no movement of the joint is possible, causing the subject to comply with verbal direction.

M. **PAIN COMPLIANCE** – A subject's response to a combination of pain and verbal commands to stop resisting.

N. **REASONABLE SUSPICION** – The facts or circumstances that reasonably indicate that a person has committed, is committing, or is about to commit a violation of the law.

O. **RESTRAINT DEVICES** - Tools designed to temporarily restrain a subject's movements, such as handcuffs.

- P. **TAKEDOWNS** - Techniques used to bring a resisting subject from a standing position to the ground, making it easier to control him or her.

- Q. **TEMPORARY MOTOR DYSFUNCTION** – A type of incapacitation that causes temporary impairment of muscle control, such as a charley horse.

- R. **TRANSPORTERS** – Techniques used to move a subject from one point to another with pain compliance and/or mechanical compliance.

### 10.01.05  OBJECTIVES

- A. To ensure that members of the Florida Highway Patrol employ the amount of force that is necessary and reasonable to prevent escape, overcome resistance and effect arrests during the performance of their official duties.

- B. To ensure that sworn members receive training and demonstrate proficiency in the use of all weapons authorized by the Florida Highway Patrol before being allowed to carry or use them.

- C. To implement measures that will enhance the integrity of law enforcement operations and contribute to the safety and security of the sworn members of the Division.

### 10.01.06  RESPONSIBILITIES

- A. The Florida Highway Patrol Training Academy shall exercise responsibility for the administration of use of control and response to resistance training programs. Academy personnel shall evaluate the content of such programs periodically in order to ensure compliance with current legislation, developments in case law and tactical considerations related to officer safety.

- B. The Professional Compliance Director shall:

    1. Create and maintain a repository for all "Use of Control Reports" generated pursuant to the provisions of this directive.

    2. Provide a method for analyzing "Use of Control" incidents and for:

        a. Identifying members who are involved in three or more "Use of Control" incidents during any twelve month period.

        b. The Office of Strategic Services, in concert with the Professional Compliance Director, shall be responsible for compiling annual reports for review by Division management which identifies trends, training requirements and other pertinent data concerning the frequency and the types of control utilized by Division members.

    3. The Office of Inspector General shall oversee/command all "Use of Control" investigations initiated at the instruction of the Director, including:

  a. Investigations concerning the use of control involving serious injury/death or the unauthorized discharge of a firearm by any Division member.

  b. Allegations of excessive force raised against members of the Division.

## 10.01.07 PROCEDURES

Members of the Florida Highway Patrol shall in every instance seek to employ the minimum amount of control required to successfully overcome physical resistance, prevent escapes, and effect arrests. **Members' actions must be objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.** However, that objective must be tempered by the need to preserve the safety of the Division's members. Consequently, members need not wait for injury to occur to themselves or to another before taking appropriate action to prevent it. The decision to employ control must be based upon the totality of circumstances known or reasonably believed by the member at the time such control is used. When danger threatens or when resistance is encountered, members should initiate action that is reasonable and necessary, but expect to be held accountable if excessive force is utilized.

  A. TYPES OF CONTROL/APPLICATIONS

    1. IDENTIFICATION - If circumstances permit, members must make their identity known.

    2. WARNING - Whenever possible, members shall exercise persuasion, advice and/or warning of the impending use of control. Warnings need not specify the type or amount of control to be applied and need only indicate that appropriate control will be utilized if compliance is not obtained. However, members are not expected to place themselves or others in jeopardy in order to deliver such warnings, and if a warning is ineffective, appropriate control should be used to affect the arrest.

    3. WEAPONLESS CONTROL METHODS

      a. Non-Impact Techniques- Firm grip and pain compliance techniques designed for subject control; transporters when verbalization proves ineffective. A firm grip and/or pain compliance control methods may be all that is necessary to overcome a subject's resistance.

      b. Takedown Techniques - Techniques which may be employed when reasonably necessary to bring a resisting subject from a standing position to the ground, making it easier to control him or her.

      c. Impact Control Techniques - Upper and lower body strikes may be employed to stop active or aggressive resistance by the subject.

4. INTERMEDIATE CONTROL METHODS

   a. Non-Impact Techniques - The baton may be employed as a control instrument in conjunction with weaponless, non-impact control procedures to apply pressure to pressure sensitive areas, thereby effecting control.

      **NOTE: Unless deadly force is justified, control devices should not be used to apply pressure to the head, neck, or throat.**

   b. Impact Techniques - The baton may be used as a defensive impact device in situations where the use of deadly force may not be justified or necessary and the sworn member reasonably believes that the use of weaponless control methods will be ineffective or will jeopardize the safety of the member or another. If in an emergency, it becomes necessary to use a flashlight or other object as an impact weapon, it shall be employed in the same manner as a baton.

   c. Chemical Agents - Substances designed to temporarily render a subject incapable of continued resistance. Chemical agents should only be directed at the person to be controlled for the amount of time necessary to establish such control.

   d. Electronic Control Devices —May be used in accordance to FHP Policy #10.05, to temporarily render a subject incapable of continued resistance.

   e. Canines - Use of control by means of canines will be governed by guidelines set forth in the Florida Highway Patrol Canine Training curriculum.

5. USE OF VEHICLE/PRECISION IMMOBILIZATION TECHNIQUE (PIT) – As it relates to Use of Control situations, members may employ the PIT Technique in accordance with FHP Policy #17.05.

6. DEADLY FORCE/DISCHARGE OF FIREARMS - Members shall not discharge firearms or otherwise employ deadly force in the performance of their official duties, EXCEPT under the following circumstances:

   a. When the member reasonably believes that such action is necessary:

      (1) To protect the member or another from an imminent threat of death or great bodily harm.

      (2) To prevent the commission of a forcible felony involving the imminent threat of death or great bodily harm AFTER other control methods have

POLICY 10.01 - 7

        failed or been determined to be impracticable. However, ramming, bumping, or attempting to ram or bump a patrol vehicle by a violator will not be construed as constituting justification for the use of deadly force, unless the member reasonably believes that the violator's actions pose a threat of death or serious bodily harm to the member or others.

   (3)   To affect the arrest of felons fleeing from justice, but only after all of the following criteria have been met:

      (a)   Such force is needed to prevent an arrest from being defeated by such flight;

      (b)   Warnings have been given; **and**

      (c)   The member reasonably believes the fleeing felon poses an imminent threat of death or serious physical harm to the member or others.

b.   To give alarm or summon assistance in an emergency when no other means can be used.

c.   During participation in firearms training, practice or competition.

d.   In accordance with Section 828.05, Florida Statutes, to kill a domestic animal that has been severely injured, but only after all of the following criteria have been met:

   (1)   The animal is on a public right-of-way;

   (2)   The animal appears to be suffering, cannot be cured or rendered fit for service and seems to be in danger of death;

   (3)   A reasonable effort has been made to locate the owner, the owner's agent, or a veterinarian.

e.   Additionally, members are authorized to use department issued firearms to kill dangerous animals/reptiles or to euthanize seriously injured wildlife when other dispositions are impractical. Each incident should be evaluated to determine if:

   (1)   The discharge of a firearm will not endanger persons or property or create a negative public image of the division.

POLICY 10.01 - 8

(2) The animal appears to be suffering and survival of sustained injuries or rehabilitation at a wildlife rescue is unlikely.

(3) The availability and proximity to a wildlife rescue facility; or

(4) The wildlife poses an imminent threat to the member or others.

(5) If the wildlife species is endangered, FWC should be notified and a determination made if FWC will respond in a reasonable time.

If it becomes necessary for a member to kill or euthanize an animal as described 10.01.07(A)(6)(d) or (e) by discharging their issued firearm, an incident report shall be completed and submitted to the appropriate supervisor within 24 hours of the incident occurring. The on-duty Shift Commander/supervisor shall be notified as soon as the situation stabilizes.

B. PROHIBITED ACTS - FIREARMS

1. Warning shots are prohibited, and no member of the Division may discharge a firearm for the purpose of inducing a fleeing suspect to stop.

2. No member shall display or unholster a firearm in the presence of others unless such display is reasonably necessary as part of the member's official duties. There shall be no horseplay with firearms, loaded or unloaded, or with any other weapons. It shall be the duty of every member of the Division to use sound, responsible judgment in the handling of firearms and other weapons or devices in order to prevent accidental discharge that may result in injury, death or damage to property.

C. DUTY TO REPORT/RENDER AID

Whenever a member employs any **physical means** to overcome resistance; including the use of weaponless control techniques, intermediate control methods, or deadly force; such member shall, unless physically incapacitated:

1. Ensure that the subject has been properly restrained or no longer poses an immediate threat to the safety of officers or others.

    a. Restrained subjects should be placed in an upright or seated position.

    b. Specifically, heavyset persons, if handcuffed, should not be required to remain in a prone position (lying on chest).

2. Determine the physical condition of the person(s) subjected to physical control.

3. Render first aid and summon emergency medical assistance if needed.

4. Provide assistance to persons subjected to the effects of Aerosol Subject Restraint (ASR), including:

   a. Reassuring the subject that the effects of the substance are temporary and that the care being provided will assist with recovery.

   b. Monitor the subject for physical conditions that would indicate the possible onset of a medical emergency, including:

      (1) Profuse sweating.

      (2) Chest/neck pain.

      (3) Shallow or restricted breathing.

      (4) Loss of consciousness.

      (5) Manifestations of paranoia/panic.

      (6) Sudden tranquility after an outburst of bizarre or aggressive behavior.

   c. If one or more of the medical conditions cited in "b" above are detected, the member shall immediately transport/arrange transportation for the subject to the nearest hospital or medical facility.

5. Provide assistance to persons subjected to the effects of the Electronic Control Device (ECD) in accordance with FHP Policy #10.05.

6. Use of Control Reporting Requirements:

   a. Provide immediate notification to the duty supervisor to whom the member is directly responsible or to the District Lieutenant or Shift Commander in the troop in which the incident involving use of control takes place. Such notification shall occur as soon as the situation at the scene has been stabilized.

      **NOTE:** The simple use of handcuffs or application of wrist/joint locks (if the use of such have little or no chance of producing injuries when gaining control over or subduing non-compliant or resisting persons) does not require notification or a written report as outlined in this policy. If, however, such use results in injury or the

    complaint of injury, members shall write such reports and notify supervisors as outlined.

  b. Prepare and submit an Arrest Report (DHSMV 60005) if one or more subjects have been taken into custody or an Offense Report (DHSMV 60009) outlining:

    (1) The details of the incident.

    (2) The identity and address of subjects/witnesses.

    (3) The type of resistance offered and control method used.

  Such report shall be submitted to the member's immediate supervisor or any on-duty supervisor, before the member will be permitted to go off duty.

D. **INCIDENTS COVERED BY THE FHP/FDLE MEMORANDUM OF UNDERSTANDING**

 1. The Florida Highway Patrol and the Florida Department of Law Enforcement have entered into a Memorandum of Understanding regarding the investigation of the following types of incidents:

  a. The shooting of a person by a trooper in the line of duty.

  b. The shooting of a trooper in the line of duty.

  c. The infliction of serious bodily harm upon a trooper acting in the line of duty (other than in a traffic crash or other accidental circumstance).

  d. The death of an arrestee while in the care, custody or control of a trooper; the death of an arrestee shortly after being in the care, custody or control of a trooper; or the death of an intended arrestee during an arrest attempted by a trooper.

 2. FDLE will assume overall direction and responsibility for all criminal investigations involving the above listed types of incidents.

 3. FDLE will promptly coordinate the dispatch of the Critical Incident Team, appropriate Crime Laboratory Personnel, Medical Examiner Personnel, State Attorney Personnel and additional Law Enforcement personnel as required.

 4. The Office of Inspector General will be responsible for any internal or administrative investigations involving the above listed types of incidents.

 5. Duties of Senior Trooper or Supervisor at the Scene.

  a. Ensure that the Troop Shift Commander is notified.

  b. Secure the scene. No one is to be allowed into the scene except, emergency medical personnel, crime scene technicians, medical examiner personnel, state attorney personnel, investigating FDLE members and other law enforcement investigators assisting FDLE.

  c. Ensure that physical evidence is preserved.

  d. Identify and separate all law enforcement and citizen witnesses pending the arrival of the FDLE Critical Incident Team.

  e. Coordinate crowd/traffic control with local law enforcement agencies.

  f. Provide assistance to FDLE investigative personnel as requested.

6. Duties of the Troop Shift Commander.

  a. Ensure that an FHP supervisor and emergency medical personnel have been dispatched to the scene.

  b. Notify the FHP chain of command and the FHP Critical Incident Stress Debriefing Team Leader, if available.

  c. Notify the appropriate FDLE regional operations center to request that an FDLE Critical Incident Team be dispatched to the scene.

  d. Notify the troop Public Affairs Officer, the local Sheriff's Office, and if the incident occurred within an incorporated municipality, the Chief of Police will also be notified.

7. Duties of the Troop Commander.

  a. Notify the Professional Compliance Director and the Chief of the Criminal Investigations Bureau.

  b. Ensure appropriate supervisory or investigative personnel are assigned to conduct an administrative investigation and complete the Supervisory Use of Control Report (HSMV 60215), if appropriate.

8. Duties of the Criminal Investigations Bureau.

  a. Assign an investigator(s) to assist FDLE with any criminal investigation.

  b. While assisting FDLE, Criminal Investigations Bureau personnel will:

   (1) Serve as a member of the FDLE Critical Incident Team and assist FDLE with the investigation.

   (2) Serve under the direction of FDLE supervisory personnel during the term of the investigation.

   (3) While assigned to the FDLE Critical Incident Team, a CIB investigator will not be involved in any internal or administrative investigation conducted.

9. FHP may release an initial press statement acknowledging an incident, reporting the status of the member(s) involved in the incident, and making reference to the investigative process. Press statements related to the investigation will be provided to the media by FDLE. Media inquiries concerning the investigation are to be referred to FDLE.

E. USE OF CONTROL INCIDENTS NOT COVERED BY THE FHP/FDLE MEMORANDUM OF UNDERSTANDING

1. All use of control incidents involving the application of:

 a. The ECD

 b. The ASR

 c. The PIT

 d. The discharge of a firearm; or

 e. A control method that results in injury to any participant that is not covered by the FHP/FDLE Memorandum of Understanding will be investigated by FHP personnel and recorded on the Supervisory Use of Control Report (HSMV 60215).

2. Duties of the On-Duty/On-Call Supervisor:

 a. Arrange for protection/processing of the crime scene (if appropriate).

 b. Arrange to have witnesses identified/detained (if applicable).

 c. Notify the Troop Shift Commander of the incident.

 d. Respond to the scene/hospital/jail to review the situation.

 e. Conduct a preliminary investigation, document findings on the Supervisory Use of Control Report (HSMV 60215) and submit such report, including statements from witnesses, to the troop supervisory staff prior to concluding his/her tour of duty.

    3. Duties of the Troop Commander:

        a. Arrange for the investigation to be conducted by the duty supervisor or other personnel assigned to the troop.

        b. Arrange for a review of the incident by members of the troop supervisory staff and for appropriate follow-up action.

F. Subsequent to review at the troop level, the Troop Commander will forward all reports required by this policy to the Criminal Investigations Bureau.

G. SHOOTING INCIDENTS RESULTING IN INJURY OR DEATH: In the event of a shooting incident resulting in injury or death where a member discharged the weapon, the member shall be immediately placed on administrative duty which is reflected as work time for a minimum period of three days in order to remove the member from the associated trauma. Prior to returning to regular duty, the member will be evaluated by an agency authorized physician. Under no circumstances will the leave be construed as a disciplinary action. A member of the troop Critical Incident Stress Management Team, if available, shall make every effort to reduce the effects of post-shooting trauma on the member including, but not limited to, referral to counseling or other crisis intervention assistance. A supervisor on the scene shall promptly relieve the member of the weapon used in the shooting for investigation purposes and shall at that time give the member a substitute weapon. Further actions will be taken, if needed, after a determination of the facts is made.

H. USE OF CONTROL REVIEW SYSTEM: This system is designed to supplement existing departmental programs created to identify and assist employees with job stress and/or performance problems. The review of the Supervisory Use of Control Report should be used by supervisors as another resource in determining if job stress or performance problems exist. It is intended to serve as a resource for evaluating and providing guidance to the employee.

I. DIVISION STANDARD: This directive is intended for Division use only. Violations shall serve as a basis for administrative sanctions only. Violations of law shall form the basis for any civil or criminal actions brought in the appropriate judicial setting.

**10.01.08   REGULATIONS**

A   All members of the Florida Highway Patrol shall maintain at least one Division approved intermediate control device on their person at all times while in uniform and outside the confines of an official vehicle or Division installation. This regulation shall be binding upon all personnel in uniform whether on-duty or off-duty.

B. The Aerosol Subject Restraint (ASR) is the primary intermediate weapon issued by the Florida Highway Patrol, owing to the capability of this

        substance to incapacitate without inflicting serious, lasting injury/discomfort to an assailant. Members who by virtue of a pre-existing medical condition are unable to complete ASR training will be required to maintain certification with and carry the PR-24 / ASP on their duty belt as an alternative in accordance with the provision of "A" above.

C.     Members who have been assigned an Electronic Control Device, **must** also carry the Division issued ASR.

D.     Members seeking to be excluded from ASR training shall be required to submit a statement from a physician, outlining the medical condition/reason(s) that preclude the member's participation. The Division may, at its option, also require such personnel to submit to an examination by a physician under contract to the Agency in order to ensure that the malady claimed by the member does not diminish his/her capacity to serve as a law enforcement officer.